**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON**

HELENA KRAMER,                              :

                                                   Case No. 3:10-cv-270

              Plaintiff,

                                                   District Judge Thomas M. Rose
                                                   Magistrate Judge Michael R. Merz

  -vs-

MICHAEL J. ASTRUE,
COMMISSIONER OF
SOCIAL SECURITY,
              Defendant.          :

**REPORT AND RECOMMENDATIONS**

       Plaintiff brought this action pursuant to 42 U.S.C. §405(g) and 42 U.S.C. §1381(c)(3) as it incorporates §405(g), for judicial review of the final decision of Defendant Commissioner of Social Security (the "Commissioner") denying Plaintiff's application for Social Security benefits. The case is now before the Court for decision after briefing by the parties directed to the record as a whole.

       Judicial review of the Commissioner's decision is limited in scope by the statute which permits judicial review, 42 U.S.C. §405(g). The Court's sole function is to determine whether the record as a whole contains substantial evidence to support the Commissioner's decision. The Commissioner's findings must be affirmed if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *citing, Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *Landsaw v.*

*Secretary of Health and Human Services*, 803 F.2d 211, 213 (6th Cir. 1986).  Substantial evidence is more than a mere scintilla, but only so much as would be required to prevent a directed verdict (now judgment as a matter of law), against the Commissioner if this case were being tried to a jury. *Foster v. Bowen*, 853 F.2d 483, 486 (6th Cir. 1988);  *NLRB v. Columbian Enameling & Stamping Co.*, 306 U.S. 292, 300 (1939).

In deciding whether the Commissioner's findings are supported by substantial evidence, the Court must consider the record as a whole.  *Hepner v. Mathews*, 574 F.2d 359 (6th Cir. 1978);  *Houston v. Secretary of Health and Human Services*, 736 F.2d 365  (6th Cir. 1984); *Garner v. Heckler*, 745 F.2d 383 (6th Cir. 1984).  However, the Court may not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility.  *Garner, supra.*  If the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the Court as a trier of fact would have arrived at a different conclusion.  *Elkins v. Secretary of Health and Human Services*, 658 F.2d  437, 439 (6th Cir. 1981).

To qualify for disability insurance benefits (SSD), a claimant must meet certain insured status requirements, be under age sixty-five, file an application for such benefits, and be under a disability as defined in the Social Security Act, 42 U.S.C. § 423. To establish disability, a claimant must prove that he or she suffers from a medically determinable physical or mental impairment that can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. §423(d)(1)(A). Secondly, these impairments must render the claimant unable to engage in the claimant's previous work or in any other substantial gainful employment which exists in the national economy. 42 U.S.C. §423(d)(2).

To qualify for supplemental security benefits (SSI), a claimant must file an

2

application and be an "eligible individual" as defined in the Social Security Act. 42 U.S.C. §1381a. With respect to the present case, eligibility is dependent upon disability, income, and other financial resources. 42 U.S.C. §1382(a). To establish disability, a claimant must show that the claimant is suffering from a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §1382c(a)(A). A claimant must also show that the impairment precludes performance of the claimant's former job or any other substantial gainful work which exists in the national economy in significant numbers. 42 U.S.C. §1382c(a)(3)(B). Regardless of the actual or alleged onset of disability, an SSI claimant is not entitled to SSI benefits prior to the date that the claimant files an SSI application. *See,* 20 C.F.R. §416.335.

The Commissioner has established a sequential evaluation process for disability determinations. 20 C.F.R. §404.1520. First, if the claimant is currently engaged in substantial gainful activity, the claimant is found not disabled. Second, if the claimant is not presently engaged in substantial gainful activity, the Commissioner determines if the claimant has a severe impairment or impairments; if not, the claimant is found not disabled. Third, if the claimant has a severe impairment, it is compared with the Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1 (1990). If the impairment is listed or is medically equivalent to a listed impairment, the claimant is found disabled and benefits are awarded. 20 C.F.R. §404.1520(d). Fourth, if the claimant's impairments do not meet or equal a listed impairment, the Commissioner determines if the impairments prevent the claimant from returning to his regular previous employment; if not, the claimant is found not disabled. Fifth, if the claimant is unable to return to his regular previous employment, he has established a *prima facie* case of disability and the burden of proof shifts to the

Commissioner to show that there is work which exists in significant numbers in the national economy which the claimant can perform. *Bowen v. Yuckert,* 482 U.S. 137, 145, n.5 (1987).

Plaintiff filed applications for SSD and SSI on October 9, 2004, alleging disability from June 1, 2004, due to weak heart muscles, bi-polar with depression, inactive thyroid, migraines, and acid reflux. (Tr. 69, 559, 80). The Commissioner denied Plaintiff's applications initially and on reconsideration. (Tr. 47, 52, 557, 561). Administrative Law Judge Daniel Shell held a hearing, (Tr. 576-602), and determined that Plaintiff is not disabled. (Tr. 16-37). The Appeals Council denied Plaintiff's request for review, (Tr. 6-8), and Judge Shell's decision became the Commissioner's final decision.

In determining that Plaintiff is not disabled, Judge Shall found that she has severe mild spinal abnormality aggravated by obesity since April 24, 2007, psoriasis, and affective (bipolar) disorder. (Tr. 27, ¶ 3). Judge Shell also found that prior to April 24, 2007, Plaintiff had the residual functional capacity to perform a limited range of medium work and that since April 24, 2007, she has had the residual functional capacity to perform a limited range of light work. (Tr. 31, ¶ 5). Judge Shell then used section 203.26 of the Grid for the period prior to April 24, 2007, and section 202.18 of the Grid for the period since April 24, 2007, as frameworks for deciding, coupled with a vocational expert's (VE) testimony, and determined that for the periods both before and after April 24, 2007, there has been a significant number of jobs in the economy that Plaintiff has been capable of performing. (Tr. 35, ¶ 10). Judge Shell concluded that Plaintiff is not disabled and therefore not entitled to benefits under the Act. (Tr. 37).

In her Statement of Errors, Plaintiff argues that her "most significant problems relate to her psychiatric difficulties." PageID# 50. Indeed, Plaintiff challenges only the Commissioner's

4

findings with respect to her alleged mental impairment. PageID# 59. Accordingly, the Court will focus its review on the evidence related to Plaintiff's mental impairment.

Plaintiff has a history of mental problems which began in childhood and which required she be hospitalized on several occasions in her teen years. *See, e.g.,* Tr. 404. On October 30, 2002, Plaintiff sought crisis assessment because she was experiencing suicidal ideation. (Tr. 406). At that time, Plaintiff reported that she had been agitated and fearful during the past three months since she had quit drinking and using cannabis. *Id.* Plaintiff was hospitalized on October 31, 2002, with the diagnoses of major depressive disorder with psychotic features and history of polysubstance dependence. (Tr. 404). Plaintiff subsequently participated in counseling sessions in an out-patient program, but frequently missed sessions or was late to sessions. (Tr. 384-400). Plaintiff began drinking again and stopped attending the sessions; she was terminated from the program after attending seven sessions. *Id.*

Plaintiff sought mental health treatment at Mental Health Services for Clark County ("Mental Health") on January 30, 2003, at which time she complained of mood swings and crying spells and reported that she had relapsed the week before and used crystal meth. (Tr. 380). On February 27, 2003, Plaintiff denied current substance abuse but continued to be depressed and her therapist referred her to the partial hospitalization program to which Plaintiff was admitted on March 4, 2003. (Tr. 379; 378). At the time of Plaintiff's admission, it was noted that she appeared disheveled, she had a blunted affect and depressed mood, and that she reported being substance-free for the prior week. (Tr. 375). Plaintiff was treated with therapy and medications and she was discharged with the diagnosis of bipolar disorder NOS. (Tr. 373).

Plaintiff was hospitalized June 18-25, 2003, after she made several suicidal

statements. *See,* Tr. 343-49. The therapist who evaluated Plaintiff reported that her thought process was affective blocking, she was easily distracted, her mood was depressed, angry, and anxious, her affect was dramatic and hostile, and her insight and judgment were impaired. *Id.*

On July 28, 2003, a therapist from Mental Health reported that Plaintiff had been treated since December, 2002, her initial diagnoses were bipolar disorder NOS, history of polysubstance dependence, and personality disorder NOS, and that she had never participated consistently in outpatient counseling although she had been in therapy on and off since December, 2002. (Tr. 382-83). The therapist also reported that Plaintiff did not achieve any of her treatment goals because of her limited participation in treatment and noncompliance with medications. *Id.* The therapist noted that she was terminating Plaintiff's case from outpatient counseling but not with the psychiatrist, Dr. Vishnaupad; that her final diagnoses were bipolar disorder, most recent episode depressed, severe with psychotic features; cannabis abuse; and personality disorder NOS with borderline traits; and that her GAF was 60. *Id.*

On November 17, 2004, Plaintiff sought emergency room treatment after it was suspected she had overdosed with medication. (Tr. 225-33). At that time, a urine screen was unconfirmed positive for cannabinoid. *Id.* Plaintiff was treated and discharged. *Id.*

Plaintiff returned to Mental Health on November 18, 2004, at which time the counselor who evaluated her reported that Plaintiff was depressed and had suicidal ideations at times but no plan, was oriented, had an intact memory, and that her thought processes were logical. (Tr. 330-34). The counselor noted that Plaintiff reported having auditory hallucinations, that her insight and judgment were limited, and that her GAF was 30. *Id.*

Examining psychologist Dr. Schulz noted on March 16, 2005, that Plaintiff reported

6

that she was diagnosed with bipolar disorder in 2001, that she had been hospitalized seven times for suicidal ideation between 2001 and 2004, and that she had been attending biweekly counseling sessions for the past year. (Tr. 180-85). Dr. Schulz also noted that Plaintiff denied ever using alcohol or illegal drugs or misusing prescription medication and that she attended special education classes in school and went to the tenth grade. *Id.* Dr. Schulz reported that Plaintiff was cooperative, her speech was normal, her affect was appropriate and congruent, her motor activity was calm, she did not present any suicidal intent, and that her memory was within an adequate range. *Id.* Dr. Schulz also reported that Plaintiff was oriented and alert, her judgment appeared sufficient to make life decisions, conduct her own living arrangements, and participate in any treatment program, and that she appeared to be functioning in the low average range. *Id.* Dr. Schulz identified Plaintiff's diagnosis as bipolar disorder and he assigned her a GAF of 58. *id.* Dr. Schulz opined that Plaintiff's abilities to relate to others, to understand, remember, and follow instructions, and to maintain concentration and attention to perform simple repetitive tasks were minimally impaired and her ability to withstand the stress and pressures associated with day-to-day work activity was moderately impaired. *Id.*

Plaintiff continued to receive treatment at Mental Health and in March, 2005, she reported to psychiatrist Dr. Smith that she was doing much better and Dr. Smith noted that Plaintiff's mood and affect had improved and that she displayed no suicidal ideation. (Tr. 325). On May 25, 2005, Dr. Smith reported that Plaintiff had experienced some improvement, had no suicidal ideations, had auditory hallucinations, and that she still got depressed. (Tr. 321).

Plaintiff continued to see her counselor at Mental Health during the period November 2004, to December, 2005. (Tr. 316-17; 329, 323, 328-29).

Dr. Smith reported on January 3, 2006, that Plaintiff had marked restrictions in activities of daily living, marked difficulties in maintaining social functioning, extreme difficulties in maintaining concentration, and three episodes of decompensation. (Tr. 413-29). Dr. Smith also reported that Plaintiff was too depressed to leave the house, had mood swing, and that she was not capable of performing most work-related mental activities. *Id.*

Plaintiff was hospitalized August 15-17, 2006, after decompensating with increased mood swings, feelings of anxiety, having thought about using crystal meth, feeling increasingly anxious and overwhelmed, worrying about relapsing on drugs, and feeling suicidal. (Tr. 454-55). When she was examined on admission, Plaintiff was tense with a constricted affect and active suicidal ideation. *Id.* Plaintiff was treated with therapy and medications and she gradually improved. *Id.* Plaintiff was discharged with the diagnosis of bipolar disorder, depressed with psychotic features, and a GAF of 50. *Id.* Plaintiff continued to receive outpatient treatment at Mental Health. (Tr. 477, 481-82).

Plaintiff was hospitalized May 27 through June 1, 2007, after complaining of increased anxiety and depression, auditory hallucinations, increased tension, and feelings of being overwhelmed. (Tr. 517-18). At the time of admission, Plaintiff was fearful that she would overdose or find some other way to kill herself. *Id.* Plaintiff was treated with counseling and medications and was discharged with the diagnosis of bipolar disorder, depressed with psychotic features, and a GAF of 50. *Id.*

Plaintiff was again hospitalized June 6-10, 2007, after complaining of depression and suicidal ideation and having psychotic symptoms including paranoia and auditory hallucinations. (Tr. 526-27). Plaintiff was treated with counseling and medications and was discharged with the

8

diagnosis of schizoaffective disorder. *Id.*

On August 8, 2007, Dr. Schulz again examined Plaintiff and reported that Plaintiff was cooperative, had normal speech, her affect was appropriate and congruent, her motor activity was calm, and her mood was euthymic. (Tr. 483-89). Dr. Schulz also reported that Plaintiff did not present with any suicidal intent, she was oriented and alert, and that her judgment appeared to be sufficient to make life decisions, conduct her own living arrangements, and participate in any treatment program. *Id.* Dr. Schulz noted that Plaintiff's verbal IQ was 62, her performance IQ was 57, and her full scale IQ was 56, her memory was in the extremely low range, and that she was in the lower extreme range of reading ability. *Id.* Dr. Schulz identified Plaintiff's diagnoses as bipolar disorder NOS and borderline intellectual functioning and he assigned her a GAF of 55. *Id.* Dr. Schulz opined that Plaintiff's behavioral functioning did not support a diagnosis of mental retardation, that her abilities to relate to others and to maintain attention and concentration to perform simple repetitive tasks were minimally impaired and that her abilities to understand, remember, and follow instructions and to withstand the stress and pressures associated with day-to-day work activity were moderately impaired. *Id.*

In her Statement of Errors, Plaintiff alleges that the Commissioner erred by rejecting her treating psychiatrist's and counselor's opinions that she is disabled. (Doc. 9). In doing so, Plaintiff points out, *inter alia,* that the Commissioner failed to consider her several hospitalizations for treatment of her mental illnesses.

Failure to consider the record as a whole undermines the Commissioner's conclusion. *Hurst v. Secretary of Health and Human Services,* 753 F.2d 517, 518 (6th Cir. 1985), *citing, Allen v. Califano,* 613 F.2d 139, 145 (6th Cir. 1973).

> In the absence of an explicit and reasoned rejection of an entire line of evidence, the remaining evidence is "substantial" only when considered in isolation. It is more than merely "helpful" for the ALJ to articulate reasons ... for crediting or rejecting particular sources of evidence. It is absolutely essential for meaningful appellate review.

*Hurst,* 753 F.2d at 519 (citation omitted).

As noted above, Plaintiff's treating psychiatrist, Dr. Smith, and her counselor essentially opined that Plaintiff is not capable of performing the mental demands of work on a regular and continuing basis. In rejecting those opinions, Judge Shell determined that they are not supported by the objective evidence and are inconsistent with other evidence of record, primarily Dr. Schulz' opinion and the reviewing psychologists' opinions. In reaching that conclusion, Judge Shell determined that Plaintiff's, "symptoms of anxiety were effectively treated ... [i]t was reported that [she] was doing fairly well ... [and] her mood was stable and congruent." (Tr. 28). However, while the record certainly reveals that Plaintiff did, at times, show some improvement in her condition, that improvement was not permanent as reflected by her repeated hospitalizations for treatment of her mental illnesses. In fact, Judge Shell failed to mention in his decision Plaintiff's several psychiatric hospitalizations. *See,* Tr. 24-26; 27-31. Under the facts of this case, specifically, the Commissioner's failure to consider an entire line of evidence, the Commissioner's decision is not supported by substantial evidence on the record as a whole.

If the Commissioner's decision is not supported by substantial evidence, the Court must decide whether to remand the matter for rehearing or to reverse and order benefits granted. The Court has the authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." 42 U.S.C. §405(g). If a court determines that substantial evidence does not support the Commissioner's decision, the court can reverse the

decision and immediately award benefits only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits. *Faucher v. Secretary of Health and Human Services,* 17 F.3d 171, 176 (6th Cir. 1994) (citations omitted); *see also, Newkirk v. Shalala,* 25 F.3d 316 (6th Cir. 1994).

The fourth sentence of 42 U.S.C. Sec. 405(g) directs the entry of a final appealable judgment even though that judgment may be accompanied by a remand order. *Sullivan v. Finkelstein,* 496 U.S. 617 (1990). The fourth sentence does not require the district court to choose between entering final judgment and remanding; to the contrary, it specifically provides that a district court may enter judgment "with or without remanding the cause for rehearing." *Id.*

This Court concludes that not all of the essential factual issues have been resolved and that the record does not adequately establish Plaintiff's entitlement to benefits. Specifically, there are arguably bases why Plaintiff's numerous hospitalizations may not alone, or in conjunction with other evidence, establish that she is disabled. In other words, the Commissioner may have in spite of Plaintiff's hospitalizations, adequate bases for finding that Plaintiff is not disabled.

It is therefore recommended that this matter be remanded to the Commissioner for additional administrative proceedings. This Court notes that this is a fourth sentence remand. Therefore, it is also recommended that judgment be entered in favor of Plaintiff and against the Commissioner and that this matter be terminated on the Court's docket.

March 28, 2011.

                                                      *s/ Michael R. Merz*
                                                    United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed.R.Civ.P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed.R.Civ.P. 6(e), this period is automatically extended to seventeen days because this Report is being served by one of the methods of service listed in Fed.R.Civ.P. 5(b)(2)(B), (C), or (D) and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See, United States v. Walters,* 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985).